**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Dalit Cohen and Rosemary Robertson, *on behalf of themselves and all others similarly situated,* | : : : |
| Plaintiffs, | : : |
| vs. | : Civil Action No.: : |
| Quten Research Institute, LLC d/b/a Qunol Minerals, | : : : |
| Defendant. | : : |

For this Class Action Complaint, Plaintiffs Dalit Cohen and Rosemary Robertson, by undersigned counsel, state as follows:

**<u>INTRODUCTION</u>**

1.      Defendant Quten Research Institute, LLC d/b/a Qunol Minerals ("Defendant" or "Qunol") formulates, manufactures, advertises and sells "Extra Strength" magnesium dietary supplement capsules throughout the United States that purport to contain 420 mg of magnesium "as Magnesium Glycinate" per a serving of 2 capsules.

2.      However, it is impossible to fit 420 mg of magnesium derived from magnesium glycinate in two of the sized capsules Qunol uses; magnesium glycinate simply possesses far too low a concentration of magnesium to do so.   Other forms of magnesium containing powder – such as magnesium oxide, which is often used to treat constipation, indigestion and other digestive symptoms – contain higher percentages of magnesium and thus could fit within the capsule and deliver 420 mg of magnesium per serving, but not magnesium glycinate.

3.      Qunol prominently displays the total magnesium contents of its "Extra Strength

1

Magnesium 420 Mg" supplements (the "Magnesium Supplements" or the "Supplements") – purportedly 420 mg of magnesium "as Magnesium Glycinate" per a serving of 2 capsules, or 210 mg per capsule – on the front and back of each product's label.

4.     But the Magnesium Supplements do not contain 420 mg of magnesium as magnesium glycinate in a 2-capsule serving and thus do not contain the quantity of magnesium that is advertised, and thus warranted, on each of the product's labels.   Instead, the Supplements contain significantly less magnesium as magnesium glycinate than what is claimed and displayed or zero magnesium derived from magnesium glycinate. As set forth below, it is physically impossible for the capsules Defendant uses for its Magnesium Supplement to contain the amount of claimed magnesium as magnesium glycinate.   In misstating the actual magnesium content of the Supplements, Qunol violates federal law and regulations designed to prevent deceptive supplement labeling and breaches the express warranty created by its labeling.   Defendant's prominent misrepresentations regarding its Magnesium Supplements form a pattern of unlawful and unfair business practices that visits harm on the consuming public.

## PARTIES

5.     Plaintiff Dalit Cohen ("Ms. Cohen") is and at all times relevant hereto was an adult individual residing in Roslyn, New York.   Ms. Cohen has purchased Qunol's Magnesium Supplement within the last four years, including at a Walmart retail store located at 220 Old Country Roadd, Westbury, New York in or around June 2022.   Ms. Cohen viewed the front and back label of Defendant's Magnesium Supplements on each occasion that she purchased the product during the Class Period.

6.     Plaintiff Rosemary Robertson ("Ms. Robertson," and together with "Ms. Cohen," the "Plaintiffs") is and at all times relevant hereto was an adult individual residing in Santee,

California. Ms. Robertson has purchased Qunol's Magnesium Supplement within the last four years, including at a Rite Aid retail store located at 7224 Broadway, Lemon Grove, California in 2022.   Plaintiffs viewed the front and back label of Defendant's Magnesium Supplements on each occasion that she purchased the product during the Class Period.

7.     Defendant Quten Research Institute, LLC d/b/a Qunol Minerals ("Qunol" or "Defendant") is a New Jersey limited liability company with a principal place of business at 10 Bloomfield Avenue, Pine Brook, New Jersey 07058. From its New Jersey headquarters Qunol markets, advertises, distributes and sells a magnesium nutritional supplement product throughout the United States.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005: (1) during the Class Period Qunol sold its Magnesium Supplements to more than 100 people, (2) in the same period those sales, combined with Plaintiffs' requested injunctive relief, punitive damages and attorneys' fees, exceeds $5,000,000, and (iii) there is minimal diversity because Plaintiffs and Class Members, and Defendant are citizens of different states.

9.     Venue is proper in this district and this Court has general and specific jurisdiction over Qunol because Qunol's principal place of business is in New Jersey and Defendant's marketing, distributing and selling of the Magnesium Supplements occurred in New Jersey.

## FACTUAL ALLEGATIONS

a. *Defendant misrepresents that one capsule of the Magnesium Supplement contains 210 mg of magnesium derived from magnesium glycinate*

10.     The amount and type of magnesium contained within Defendant's Magnesium

3

Supplements is material to any consumer seeking to purchase a magnesium supplement.

11.     Defendant purports to sell its Magnesium Supplements in the form of magnesium glycinate, which is known as a highly absorbable form of magnesium, and advertises that it has a high absorption rate compared to other types of magnesium.

12.     Qunol's website advertises that "Magnesium is a mineral that is essential for the body's functions. It assists the body's metabolic reactions by supporting our bones, nervous and muscle systems"; "Qunol's high absorption magnesium promote nerve, bone, and muscle health. It also supports heart health"; and that "With high absorption compared to others, Qunols new Magnesium capsules are designed to work for you."[1]

13.     Qunol elsewhere advertises that compared to other magnesium supplements, Defendant's Supplement has "HIGH ABSORPTION," "100% DAILY VALUE" and "EXTRA STRENGTH":[2]



---

[1] https://www.qunol.com/products/magnesium-120ct-capsules (last visited March 14, 2023).

[2] *Id.*

4

14.     Similarly, in a video advertisement, Dr. Eric J. Rosenbaum, M.D., contrasts Defendant's Supplement with "regular magnesium," claiming that "Magnesium is vital for bone, nerve and muscle health.   I recommend Qunol Extra Strength Magnesium. Unlike regular magnesium, Qunol's high absorption helps you get the full benefits of magnesium. Qunol: the brand I trust."[3]

15.     Qunol labels and advertises its Magnesium Supplements in a manner that highlights the amount of magnesium as magnesium glycinate contained within.   Qunol lists the alleged magnesium content on the front label of the Supplements as well as on the back nutritional label. Such representations constitute an express warranty regarding the Magnesium Supplements' magnesium content.

16.     Indeed, as set forth in the images of the labels on the following pages,[4] "EXTRA

---

[3]  *See* https://www.youtube.com/watch?v=CtYms5F0DEc (last visited March 14, 2023).

[4]  All product images contained within this complaint were taken from Defendant's website,

STRENGTH MAGNESIUM" is prominently displayed on the front label in font larger and offset from the other text on the label and the front label notes that there is "420 mg."   Moreover, the Supplement Facts on the back label states the active ingredient is "Magnesium (as Magnesium Glycinate)," there are 2 capsules per serving and there is 420 mg in the capsules:



---

https://www.qunol.com/products/magnesium-120ct-capsules (last visited March 16, 2023).

   

Gluten Free          Vegan          Non-GMO          No Artificial Colors

## Supplement Facts

**Serving Size:** 2 Capsules
**Servings per Container:** 60

|  | Amount per Capsules | % Daily Value |
|---|---|---|
| Magnesium (as Magnesium Glycinate) | 420 mg | 100% |

*Daily Value not established

**OTHER INGREDIENTS:** Gelatin, Magnesium Stearate.
**FREE OF:** Milk and milk by-products, egg and egg by-products, fish or fish by-products, shellfish or shellfish by-products, wheat or wheat by-products, and peanuts or peanut by-products. Gluten free. Sugar free.

17.     Upon information and belief, Qunol labeled its Magnesium Supplement in a materially identical manner throughout the Class Period, stating that a serving of two capsules of the Supplement contains 420 mg of magnesium as magnesium glycinate.

18.     As set forth in the above images, the Magnesium Supplement labels claim that there is 420 mg magnesium across a serving size of two capsules derived from magnesium glycinate.

7

19.    The Supplement Facts, which are required to declare the amount of magnesium, note that 2 capsules of Defendant's Magnesium Supplement, which constitutes the recommended serving size, contains    "420 mg" of "Magnesium (as Magnesium Glycinate)." *See* https://ods.od.nih.gov/factsheets/Magnesium-HealthProfessional/ (the U.S. Department of Health & Human Services directs that "[t]he Supplement Facts panel on a dietary supplement label declares the amount of elemental magnesium in the product, not the weight of the entire magnesium-containing compound.") (visited March 14, 2023).

20.    The Supplement Facts also note that the listed 420 mg of magnesium derived from magnesium glycinate constitutes 100% of the recommended Daily Value of magnesium.   Under 21 C.F.R. § 101.9(c)(8), addressing "[t]he requirements related to including a statement of the amount per serving of vitamins and minerals," "[t]he quantitative amounts of vitamins and minerals, excluding sodium, shall be the amount of the vitamin or mineral included in one serving of the product, using the units of measurement and the levels of significance given in paragraph (c)(8)(iv) of this section." 21 C.F.R. § 101.9(c)(8)(iii). With respect to magnesium, the recommended Daily Value for adults and children over four years is 420 milligrams (mg) of magnesium. 21 C.F.R. § 101.9(c)(8) (iv).

### b.   Given the size of the capsules and the amount of magnesium contained within magnesium glycinate, it is impossible for two capsules of the Magnesium Supplement to contain 420 mg of magnesium as magnesium glycinate

21.    Defendant's representations are false and misleading.

22.    It is impossible for two capsules of Defendant's Magnesium Supplement to contain the advertised and warranted 420 mg of magnesium as magnesium glycinate in light of (1) the amount of magnesium contained in magnesium glycinate and (2) the maximum capacity of the capsules Defendant uses for its Magnesium Supplements.

23.     First, Defendant uses size 00 capsules for its Magnesium Supplements.   While the amount of powder a capsule can contain may vary based on the density of the powder contained therein, size 00 capsules hold approximately 735 mg of powder.[5] On the highest end of the density spectrum, a size 00 capsule can contain 1,092 mg of powder with a density of 1.2 g/ml; on the other end of the spectrum, size 00 capsules can fit up to 546 mg of powder with a density of 0.6 g/ml.[6]

24.     Second, magnesium glycinate contains only 14.1% magnesium by mass. [7] Accordingly, approximately 3,000 mg of magnesium glycinate is needed to obtain 420 mg of magnesium.

25.     Yet as set forth above, the two (2) size 00 capsules Defendant uses for a recommended serving of its Magnesium Supplement cannot physically fit 3,000 mg of powder regardless of its density.

26.     Therefore, *even if* the only ingredient in the Magnesium Supplements were magnesium glycinate and regardless of its density, there is necessarily less than 420 mg of magnesium as magnesium glycinate in two (2) capsules of Defendant's Supplement.[8] [9]

---

[5] *See, e.g.,* https://capsuleconnection.com/capsule-sizing-info/ (last visited March 14, 2023).

[6] *See id.*

[7] *See, e.g.,* https://en.wikipedia.org/wiki/Magnesium_glycinate (last visited March 14, 2023).

[8] For instance, if the magnesium glycinate contained a high density of 1.2 g/ml, 1,092 mg of magnesium glycinate would fit within one size 00 capsule, containing approximately 154 mg of magnesium. On the other end of the spectrum, if the magnesium glycinate had a density of 0.6 g/ml, 546 mg would fit within one size 00 capsule, containing approximately 77mg of magnesium. In both instances, significantly less than 420 mg of magnesium derived from magnesium glycinate can fit within two (2) size 00 capsules.

[9] Tellingly, other size 00 capsule magnesium glycinate supplements marketed and sold by other companies purport to contain significantly less magnesium than Qunol's Magnesium Supplement.   For instance, one such magnesium glycinatesupplement's Supplement Facts states

27.     However, in addition to magnesium glycinate, each capsule of the Magnesium Supplement also contains "Gelatin" and "Magnesium Stearate" which further lowers the amount of magnesium as magnesium glycinate that can be contained within the capsules that Defendant uses for it Supplements.

28.     In light of the foregoing, Defendant's representations that two capsules of the Magnesium Supplements contains 420 mg of magnesium as magnesium glycinate is false.

29.     Thus, to the extent that the Supplements contain some form of magnesium, such magnesium is not derived from magnesium glycinate and instead must come from an alternative, undisclosed source of magnesium.   For instance, the magnesium may be derived from magnesium oxide, which contains a higher percentage of elemental magnesium than magnesium glycinate but which is less desirable to consumers because, *inter alia*, it is not absorbed by the body as well as magnesium glycinate and therefore is less desirable to those consumers who seek to raise their magnesium levels.

30.     The above misrepresentations regarding the contents and ingredients of Defendant's Magnesium Supplements are unlawful under both state and federal law.   The Federal Food, Drug, and Cosmetic Act ("FDCA'), passed by Congress in 1938, grants the Food and Drug Administration ("FDA") power to ensure "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A).   In 1990, Congress amended the FDCA with the Nutrition Labeling and Education Act ("NLEA"), which sought to clarify and strengthen the FDA's legal authority to require nutrition labeling on foods, and to establish the circumstances under which

---

that "Each (size 00) vegetarian capsule contains: Magnesium (as magnesium glycinate) 120 mg." *See* https://www.pureencapsulationspro.com/magnesium-glycinate.html (last visited March 14, 2023).

claims may be made about nutrients in foods. 21 U.S.C. §§ 343, et seq.

31.     Qunol's false and deceptive statements violate 21 U.S.C. § 343(a)(1), which deems food (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular." Federal regulations also dictate the manner in which Defendant must label its product and the methods it must use to determine the magnesium contents of its product. Defendant failed to ensure the accuracy of its Magnesium Supplements' labels in accordance with these federal regulations.

32.     New York likewise prohibits the misbranding of food in a way that parallels the FDCA through New York's Agriculture and Marketing Law which provides in relevant part that food shall be deemed misbranded "[i]f its labeling is false or misleading in any particular," and also incorporates the FDCA's labeling provisions found in 21 C.F.R. § 101. N.Y. Agric. & Mkts. Law § 201; N.Y. Comp. Codes R. & Regs. tit. 1, § 259.1 ("the commissioner hereby adopts the current regulations as they appear in title 21 of the *Code of Federal Regulations* (revised as of April 1, 2013; U.S. Government Printing Office, Washington, DC 20402), in the area of food packaging and labeling as follows").

33.     California also prohibits the misbranding of food in a way that parallels the FDCA through the "Sherman Food, Drug, and Cosmetic Law," Cal. Health & Safety Code § 109875, *et seq.* (the "Sherman Law").  The Sherman Law explicitly incorporates by reference "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date" as the food labeling regulations of Cal. Health & Safety Code § 110100(a). Accordingly, the Sherman Law also provides that food or nutritional supplements are misbranded if its labeling is "false or misleading in any particular." *Id.*

11

34.     New Jersey law similarly provides that "a food shall ... be deemed misbranded ... [i]f its labeling is false or misleading in any particular," and incorporates by reference the FDCA's labeling regulations in 21 C.F.R. § 101. N.J.S.A. 24:5–17(a), N.J. Admin. Code tit. 8, § 24–3.6.

35.     Qunol's representations regarding the magnesium contents of its Magnesium Supplement – including its representation that there are 420 mg of magnesium derived from magnesium glycinate in two (2) capsules – are material. Reasonable consumers of magnesium supplements base their purchasing decisions on the advertised and warranted amount of magnesium contain therein and the source from which such magnesium is derived.  Consumer specifically prize magnesium derived from magnesium glycinate over other sources of magnesium because of its "high absorption," as Defendant claims.   Additionally, consumers reasonably rely of Defendant's label to accurately determine the identity, amount and source of any dietary ingredients included within the Defendant's Magnesium Supplements. Accordingly, Plaintiffs and Class Members, as reasonable consumers, were materially misled by Defendant's representations regarding the true nature and composition of the Magnesium Supplements' magnesium contents.

36.     Further, such misrepresentations also breach Defendant's express warranty that each serving of the Magnesium Supplement contains magnesium "as magnesium glycinate" in the amount listed on its label (420mg).

37.     The difference between the Magnesium Supplements promised and the products sold is significant and material because the sold products do not contain 420 mg of magnesium derived from magnesium glycinate per serving of two (2) capsules. The amount and source of actual magnesium provided, and the measure of magnesium per serving/capsule, has real impacts on the benefits provided to consumers by the Magnesium Supplements and the actual value of the Supplements. Persons requiring a certain amount of magnesium supplementation – whether to

"promote nerve, bone, . . . muscle health" or to "support[ ] heart health," as Qunol claims[10] – are left to ingest less magnesium as magnesium glycinate than Defendant states will be provided, and are left to ingest magnesium that is derived from sources of magnesium that are inferior and less desirable than the magnesium glycinate promised by the Defendant.

38.     Because Plaintiffs and Class Members purchased a product that contains less magnesium as magnesium glycinate than advertised and warranted, Plaintiffs and Class Members have suffered an injury-in-fact. Misbranded nutritional supplements cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded nutritional supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements are entitled to a restitution refund of the purchase price of the misbranded nutritional supplements. Additionally, had Plaintiffs and Class Members known the true nature and composition  of the magnesium content of the Magnesium Supplements, they would not have purchased such Products, or would have only paid for the magnesium as magnesium glycinate actually delivered with the Supplements.

39.     On March 24, 2023, prior to initiating this action, Plaintiffs' counsel sent demand letters to Qunol on behalf of each of the Plaintiffs.   The letters, *inter alia,* (1) alleged that Qunol mislabels and falsely misrepresents the contents of its Magnesium Supplements and the Supplements contain less magnesium as magnesium glycinate than advertised in light of the amount of magnesium glycinate that can be contained within the size 00 capsules Defendant uses for its Supplements; (2) alleged that Qunol breached its written and implied warranties and violated, *inter alia,* the New Jersey Consumer Fraud Act, NY G.B.L. §§ 349 & 350, the Sherman

---

[10] *See* https://www.qunol.com/products/magnesium-120ct-capsules (last visited March 16, 2023).

Food, Drug, and Cosmetic Law, the California Consumers Legal Remedies Act, and the Magnuson-Moss Warranty Act; (3) alleged that Ms. Cohen, Ms. Robertson and similarly situated consumers had been harmed and injured because they were misled into purchasing Qunol's Magnesium Supplements and would have paid  significantly less for or not purchased the supplements had they known about the true magnesium content of the supplements; and (4) demanded that "Qunol immediately cease the above unlawful practices, cease mislabeling and misbranding Qunol's Magnesium Supplements," demanded that it provide Plaintiffs "and all other United States purchasers of the Magnesium Supplements within the last four years with full restitution of all improper revenues and ill-gotten profits derived from Qunol's wrongful conduct to the fullest extent permitted by law," and asserted that "purchasers of misbranded nutritional supplements" like Plaintiffs "are entitled to a restitution refund of the purchase price of the misbranded supplements."

## CLASS ACTION ALLEGATIONS

### A.  The Classes

40.     Plaintiffs bring this action on their own behalf and on behalf of the following Classes of persons pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3) an/or 23(c)(5):

**Nationwide Class:** All persons in the United States who purchased Defendant's Magnesium Supplements during the four year period preceding the filing of the complaint.

**California Sub-Class:** All persons residing in California who purchased Defendant's Magnesium Supplements during the four year period preceding the filing of the complaint.

**New York Sub-Class:** All persons residing in New York who purchased Defendant's Magnesium Supplements during the four year period preceding the filing of the complaint.

41.     Any legal entity, Defendant and its employees or agents are excluded from the

Class.

**B.   <u>Numerosity</u>**

42.     Upon information and belief, the Classes are so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, Plaintiffs believe, and on that basis allege, that Qunol has sold its Magnesium Supplements to thousands of California and New York purchasers during the Class Period, thousands of more persons around the country and therefore there are thousands of members in the Classes.

**C.   <u>Common Questions of Law and Fact</u>**

43.     There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members.   These questions include:

a.      Whether Defendant labels, markets and otherwise advertises its Magnesium Supplements in a deceptive, false, or misleading manner by misstating the product's magnesium content;

b.      Whether Defendant's sale of the Magnesium Supplements constitutes unfair methods of competition and unfair or deceptive acts or practices including: whether Defendant misrepresents the source, sponsorship, approval, or certification of their Magnesium Supplements; whether Defendant misrepresents that the Magnesium Supplements have benefits which they do not have; whether Defendant represents that the Magnesium Supplements are of a particular standard or quality if it is of another; and whether Defendant advertises its Magnesium Supplements with intent not to sell them as advertised;

c.      Whether Defendant's sale of the Magnesium Supplements constitutes false,

misleading and deceptive advertising;

d.    Whether Defendant's sale of the Magnesium Supplements violates New York General Business Law §§ 349 & 350, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, the California Consumers Legal Remedies Act, and the New Jersey Consumer Fraud Act;

e.    Whether Defendant's sale of the Magnesium Supplements constitutes a breach of warranty;

f.    Whether Defendant concealed material facts concerning the Magnesium Supplements;

g.    Whether Defendant engaged in unconscionable commercial practices in failing to disclose material information concerning the Magnesium Supplements;

h.    The nature and extent of damages, restitution, equitable remedies, and other relief to which Plaintiffs and the Class are entitled; and

i.    Whether Plaintiffs and the Classes should be awarded attorneys' fees and the costs of suit.

**D.   Typicality**

44.    The Plaintiffs' claims are typical of the claims of the Classes since Plaintiffs purchased the Magnesium Supplements within the last four years, as did each member of the Class. Furthermore, Plaintiffs and all members of the Class sustained economic injuries arising out of Defendant's wrongful conduct.   Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

**E.   Protecting the Interests of the Class Members**

45.    Plaintiffs will fairly and adequately protect the interests of the Class and have

16

retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiffs nor their counsel has any interest which might cause them not to vigorously pursue this action.

**F.**   **Proceeding Via Class Action is Superior and Advisable**

46.   A class action is the superior method for the fair and efficient adjudication of this controversy.   The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.   It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.    Even if the members of the Class could afford such individual litigation, the court system could not.   Individualized litigation presents a potential for inconsistent or contradictory judgments.   Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.   By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.

47.   Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**
**Violation of New Jersey Consumer Fraud Act**
**(N.J.S.A. § 56:8-1, Et Seq.)**
**(Plaintiffs On Behalf of the Nationwide Class)**

48.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

49.   This claim is brought by Plaintiffs on behalf of the Nationwide Class.

50.     Plaintiffs and Class members are "persons" under the New Jersey Consumer Fraud Act ("CFA").

51.     At all relevant times material hereto, Defendant conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

52.     The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

53.     New Jersey law provides that "a food shall ... be deemed misbranded ... [i]f its labeling is false or misleading in any particular," and incorporates by reference the FDCA's labeling regulations in 21 C.F.R. part 101. N.J.S.A. 24:5–17(a), N.J. Admin. Code tit. 8, § 24–3.6. California

54.     Defendant's practices violated the CFA for, inter alia, one or more of the following reasons:

(a)     Defendant's marketing and labeling of the Magnesium Supplements contain false representations regarding the magnesium content of the Supplements;

(b)     Defendant concealed from Plaintiffs and the Classes material facts concerning the composition of the Magnesium Supplements.

(c)     Defendant engaged in unconscionable commercial practices in failing to disclose that the Magnesium Supplements did not contain 210mg of magnesium as magnesium glycinate.

55.     Defendant's unconscionable conduct described herein included the omission and concealment of material facts.

56.     Defendant intended that Plaintiffs and the Classes rely on its acts of concealment and omissions and misrepresentations, so that Plaintiffs and the Classes would purchase the

18

Magnesium Supplements.

57.     Had Defendant disclosed all material information regarding the Magnesium Supplements to Plaintiffs and the Classes, they would not have purchased Magnesium Supplements.

58.     The foregoing acts, omissions and practices proximately caused Plaintiffs and the Classes to suffer an ascertainable loss in the form of, inter alia, money, and they are entitled to recover such damages together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

59.     By failing to disclose and by actively concealing the material deficiency in its product, Defendant engaged in unfair and deceptive business practices in violation of the CFA.

60.     In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the Magnesium Supplements were not as advertised or marketed.

61.     Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Class members, about the true nature and content of their product.

62.     Defendant knew or should have known that the Magnesium Supplements were falsely marketed and its conduct violated the CFA.

63.     Because Defendant fraudulently concealed the content of the Magnesium Supplements, Plaintiffs and the Classes were deprived of the benefit of their bargain.

64.     Plaintiffs suffered ascertainable losses caused by Defendant's misrepresentations and its concealment.

65.     As a direct and proximate result of Defendant's violations of the CFA, Plaintiffs has suffered injury-in-fact and/or actual damage, as alleged above.

66.     Plaintiffs seek punitive damages against Defendant because Defendant's conduct was egregious and unconscionable.   Defendant's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.

67.     Because Defendant's unconscionable conduct caused injury to Plaintiffs and Class members, Plaintiffs and the Class members seek recovery of actual damages including diminution of value, together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

## SECOND CAUSE OF ACTION
### Fraudulent Concealment
### (Plaintiffs On behalf of the Nationwide Class)

68.     Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

69.     By failing to disclose and concealing the contents of the Magnesium Supplements from Plaintiffs and Class Members (i.e., the Magnesium Supplements do not include the amount of magnesium derived from magnesium glycinate advertised and warranted), Defendant concealed and suppressed material facts concerning the Magnesium Supplements.

70.     Defendant knew or should have known that the Magnesium Supplements did not contain the amount of magnesium as magnesium glycinate advertised and warranted and were not suitable for their intended use.

71.     Defendant was under a duty to Plaintiffs and Class Members to disclose and/or not misrepresent the contents of the Magnesium Supplements because:

a.      Defendant was in a superior position to know the true state of facts about the magnesium contents of Defendant's Magnesium Supplements, including the type

20

of magnesium Defendant included in the Supplements;

b.      Plaintiffs and Class Members could not reasonably have been expected to learn or discover that the Magnesium Supplements do not contain the amount of magnesium as magnesium glycinate advertised and warranted; and,

c.      Defendant knew that Plaintiffs and Class Members could not reasonably have been expected to learn about or discover the true magnesium contents of Defendant's Magnesium Supplements.

72.     On information and belief, Defendant still has not made full and adequate disclosures, and continues to defraud consumers by concealing material information regarding the contents of the Magnesium Supplements.

73.     The facts concealed or not disclosed by Defendant to Plaintiffs and Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Magnesium Supplements.

74.     Plaintiffs and the Classes relied on Defendant to disclose material information it knew, such as the defective nature and contents of the Magnesium Supplements, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

75.     By failing to disclose the true contents of the Magnesium Supplements, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

76.     Had Plaintiffs and other Class Members known that Magnesium Supplements did not contain the amount of advertised and warranted magnesium as magnesium glycinate, they would not have purchased the Magnesium Supplements or would have paid less for them.

77.     As a result of Defendant's misconduct, Plaintiffs and the other Class Members have been harmed and have been injured.

21

78.     Accordingly, Defendant is liable to Plaintiffs and Class Members for damages in an amount to be proven at trial.

79.     Defendant's actions and omissions were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class's rights and well-being, to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

80.     Furthermore, as the intended and expected result of its fraud and conscious wrongdoing, Defendant has profited and benefited from Plaintiffs' and Class Members' purchases of falsely advertised and misbranded Magnesium Supplements.  Defendant has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Defendant's misconduct alleged herein, Plaintiffs and Class Members were not receiving magnesium supplements of the quality, nature, fitness, or value that had been represented by Defendant, and that a reasonable consumer would expect.

81.     Defendant has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale of the Magnesium Supplements and by withholding benefits from Plaintiffs and Class Members at the expense of these parties. Equity and good conscience militate against permitting Defendant to retain these profits and benefits, and Defendant should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

## THIRD CAUSE OF ACTION
**Breach of Express Warranty Pursuant to N.Y. UCC § 2-313**
**(Plaintiff Cohen On Behalf of the New York Class)**

82.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding

22

paragraphs of this Complaint.

83.    Plaintiffs and each member of the Class formed a contract with Defendant at the time Plaintiffs and the other members of the Class purchased one or more of Defendant's Magnesium Supplements. The terms of that contract include the promises and affirmations of fact made by Defendant on the packaging of the Magnesium Supplements regarding the products' magnesium content, and specifically that one serving of the product contains 420 mg of magnesium as magnesium glycinate.

84.    The Magnesium Supplements' packaging constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiffs and the members of the Class on the one hand, and Defendant on the other.

85.    All conditions precedent to Defendant's liability under this contract have been performed by Plaintiffs and the Class.

86.    Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing the products that could provide the benefits promised, i.e. that the Supplements contain the warranted amount of magnesium as magnesium glycinate, as alleged above.

87.    As a result of Defendant's breach of its contract, Plaintiffs and the Class have been damaged in the amount of the different purchase price of any and all of the Magnesium Supplements they purchased and the price of a product which provides the benefits and contents as warranted.

## FOURTH CAUSE OF ACTION
### Violation of New York General Business Law §§ 349 & 350, et seq.
### (Plaintiff Cohen On Behalf of the New York Class)

88.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as

though fully stated herein.

89.     New York's GBL §§ 349 and 350 prohibit "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state" and materially misleading advertising, respectively. GBL §§ 349(a), 350.

90.     New York's Agriculture and Marketing Law provides in relevant part that food shall be deemed misbranded "[i]f its labeling is false or misleading in any particular," and also incorporates the FDCA's labeling provisions found in 21 C.F.R. § 101. N.Y. Agric. & Mkts. Law § 201; N.Y. Comp. Codes R. & Regs. tit. 1, § 259.1

91.     At all material times, Defendant engaged in a scheme of offering the Magnesium Supplements for sale to Plaintiffs, and other members of the Class by way of, inter alia, commercial marketing, and advertising, internet content, product packaging and labelling, and other promotional materials.

92.     These materials, advertisements and other inducements misrepresented and/or omitted the true contents and benefits of the Magnesium Supplements as alleged herein. Such advertisements and inducements appear on the labels of Defendant's Magnesium Supplements and Defendant's website.

93.      Defendant knew, or in the exercise of reasonable care should have known, that the statements regarding its Magnesium Supplements' magnesium content, and specifically the amount of magnesium as magnesium glycinate, were false, misleading and/or deceptive.

94.     Consumers, including Plaintiffs and members of the Class, necessarily and reasonably relied on Defendant's statements regarding the contents of its products. Consumers, including Plaintiffs and members of the Class, were among the intended targets of such representations.

95.     The above acts of Defendant, in disseminating said misleading and deceptive statements to consumers, including Plaintiffs and members of the Class, were and are likely to deceive reasonable consumers by obfuscating the true nature and amount of the ingredients in Defendant's Magnesium Supplements, including the true source and amount of magnesium, and constitute unfair and deceptive acts and practices and materially misleading advertising.

96.     Plaintiffs and Class members were harmed and suffered injury as a result of Defendant's conduct. Defendant has been unjustly enriched at the expense of Plaintiffs and the members of the Class.

97.     Accordingly, Plaintiffs and members of the Class seek damages including full restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by law. Misbranded nutritional supplements cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded nutritional supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements are entitled to a restitution refund of the purchase price of the misbranded supplements.

**FIFTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability Pursuant to N.Y. U.C.C. LAW § 2-314**
**(Plaintiff Cohen On Behalf of the New York Class)**

98.     Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

99.     Defendant is a merchant with respect to the Magnesium Supplements.

100.    The Magnesium Supplements were subject to implied warranties of merchantability running from the Defendant to Plaintiffs and Class Members.

101.    An implied warranty that the Magnesium Supplements were merchantable arose by

25

operation of law as part of the sale of the Magnesium Supplements.

102.   Defendant breached the implied warranty of merchantability in that the Magnesium Supplements do not contain the amount of advertised magnesium derived from magnesium glycinate, do not provide the benefits associated with the warranted and advertised 420 mg of magnesium as magnesium glycinate, and thus were not in merchantable condition when Plaintiffs and Class Members purchased them, or at any time thereafter, and they were unfit for the ordinary purposes for which such nutritional supplements are used.

103.   Defendant has breached the implied warranty of merchantability because the Magnesium Supplements when sold would not pass without objection in the trade.

104.   As a result of Defendant's breach of the applicable implied warranties, purchasers of the Magnesium Supplements suffered an ascertainable loss, were harmed, and suffered actual damages.

<u>**SIXTH CAUSE OF ACTION**</u>
**Breach of Express Warranty Pursuant to Cal. Com. Code § 2313**
**(Plaintiff Robertson On Behalf of the California Class)**

105.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

106.   Plaintiffs and each member of the Class formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased one or more of Defendant's Magnesium Supplements. The terms of that contract include the promises and affirmations of fact made by Defendant on the packaging of the Magnesium Supplements regarding the products' magnesium content, and specifically that the product contains 420 mg of magnesium as magnesium glycinate per each 2-capsule serving.

107.   The Magnesium Supplements' packaging constitute express warranties, became

26

part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other.

108.    All conditions precedent to Defendant's liability under this contract have been performed by Plaintiffs and the Class.

109.    Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing the products that could provide the benefits promised, i.e. that the Supplements contain the warranted amount of magnesium as magnesium glycinate, as alleged above.

110.    As a result of Defendant's breach of its contract, Plaintiffs and the Class have been damaged in the amount of the different purchase price of any and all of the Magnesium Supplements they purchased and the price of a product which provides the benefits and contents as warranted.

## SEVENTH CAUSE OF ACTION
### Violation of Cal. Bus. & Prof. Code §§ 17500, *et seq*.- Untrue, Misleading and Deceptive Advertising
### (Plaintiff Robertson On Behalf of the California Class)

111.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

112.    At all material times, Defendant engaged in a scheme of offering the Magnesium Supplements for sale to Plaintiff, and other members of the Class by way of, inter alia, commercial marketing, and advertising, internet content, product packaging and labelling, and other promotional materials.

113.    These materials, advertisements and other inducements misrepresented and/or omitted the true contents and benefits of the Magnesium Supplements as alleged herein. Such

advertisements and inducements appear on the labels of Defendant's Magnesium Supplements and Defendant's website.

114.    Defendant's advertisements and other inducements come within the definition of advertising as contained in Cal. Bus. Prof. Code §§ 17500, et seq., in that such promotional materials were intended as inducements to purchase Defendant's Magnesium Supplements and are statements disseminated by Defendant to Plaintiffs and other members of the Class.

115.    Defendant knew, or in the exercise of reasonable care should have known, that the statements regarding its Magnesium Supplements' magnesium content, and specifically the amount of magnesium as magnesium glycinate, were false, misleading and/or deceptive.

116.    Consumers, including Plaintiffs and members of the Class, necessarily and reasonably relied on Defendant's statements regarding the contents of its products. Consumers, including Plaintiffs and members of the Class, were among the intended targets of such representations.

117.    The above acts of Defendant, in disseminating said misleading and deceptive statements throughout the State of California to consumers, including Plaintiffs and members of the Class, were and are likely to deceive reasonable consumers by obfuscating the true nature and amount of the ingredients in Defendant's Magnesium Supplements, including the true source and amount of magnesium, and thus were violations of Cal. Bus. Prof. Code §§ 17500, et seq.

118.    Plaintiffs and Class members were harmed and suffered injury as a result of Defendant's violations of the Cal. Bus. Prof. Code §§ 17500, et seq. Defendant has been unjustly enriched at the expense of Plaintiffs and the members of the Class.

119.    Accordingly, Plaintiffs and members of the Class seek damages including full restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful

conduct to the fullest extent permitted by law. Misbranded nutritional supplements cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded nutritional supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements are entitled to a restitution refund of the purchase price of the misbranded supplements.

### EIGHTH CAUSE OF ACTION
**Violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* - Misrepresentation of a product's standard, quality, sponsorship approval, and/or certification**
**(Plaintiff Robertson On Behalf of the California Class)**

120.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

121.    Defendant's Magnesium Supplements are a "good" as defined by California Civil Code §1761(a).

122.    Defendant is a "person" as defined by California Civil Code § 1761(c).

123.    Plaintiff Robertson and California Class members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased their Magnesium Supplements for personal, family or household use.

124.    The sale of Defendant's Magnesium Supplements to Plaintiffs and California Class members is a "transaction" as defined by California Civil Code §1761(e).

125.    By labeling their Magnesium Supplements as containing a specific amount of magnesium as magnesium glycinate when in fact these products contained less than the advertised amount of magnesium, Defendant violated California Civil Code §§ 1770(a)(2), (5), (7) and (9), as it misrepresented the standard, quality, sponsorship, approval, and/or certification of its Magnesium Supplements.

126.    As a result of Defendant's conduct, Plaintiffs and California Class members were harmed and suffered actual damages as a result of Defendant's unfair competition and deceptive acts and practices. Had Defendant disclosed the true nature and/or not falsely represented its Magnesium Supplements' magnesium content, Plaintiffs and the California Class would not have been misled into purchasing Defendant's Magnesium Supplements, or, alternatively, would have paid significantly less for them.

127.    Additionally, misbranded nutritional supplements cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded nutritional supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements are entitled to a refund of the purchase price of the misbrand nutritional supplements.

128.    Plaintiff Robertson, on behalf of herself and all other similarly situated California consumers, and as appropriate, on behalf of the general public of the state of California, seeks injunctive relief prohibiting Defendant continuing these unlawful practices pursuant to California Civil Code § 1782(a)(2).

129.    Plaintiff Robertson provided Defendant with notice of its alleged violations of the CLRA pursuant to California Civil Code § 1782(a) via certified mail, demanding that Defendant correct such violations.

130.    If Defendant fails to respond to Plaintiff Robertson's CLRA notice within 30 days, Plaintiffs may amend this Complaint to seek all available damages under the CLRA for all violations complained of herein, including, but not limited to, statutory damages, punitive damages, attorney's fees and cost and any other relief that the Court deems proper.

**NINTH CAUSE OF ACTION**

**Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.**
**(Plaintiff Robertson On Behalf of the California Class)**

131.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

132.    The Sherman Law, Cal. Health & Safety Code §§ 109875 et seq., broadly prohibits the misbranding of any food or drug products.

133.    Defendant is a person within the meaning of Cal. Health & Safety Code § 109995.

134.    Additionally, California has adopted as its own, and as the Sherman Law expressly incorporates, "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date" as "the food labeling regulations of this state." Cal. Health & Safety Code § 110100(a).   Federal statutes and regulations, including, but not limited to, 21 U.S.C. §§ 321, 343, prohibit the mislabeling and misbranding of food products, including nutritional supplements. See 21 U.S.C. § 321(ff) ("a dietary supplement shall be deemed to be a food within the meaning of this chapter.").

135.    Federal statutes and regulations prohibit misleading consumers by misrepresenting a product's nutritional ingredients and including an ingredient or an amount of an ingredient on the Magnesium Supplements' nutritional labels that is not actually included in the products themselves.

136.    The California Civil Code § 1770(a)(2), (5), (7) and (9) also prohibits mislabeling food misrepresenting the standard, quality, sponsorship, approval, and/or certification of food products, as noted above.

137.    The business practices alleged above are unlawful under Business and Professional Code §§ 17500, et seq., California Civil Code §§ 1770(a)(2), (5), (7) and (9) and the Sherman

Law, each of which forbids the untrue, fraudulent, deceptive, and/or misleading marketing, advertisement, packaging and labelling of food products and dietary supplements.

138.   As a result of Defendant's above unlawful, unfair and fraudulent acts and practices, Plaintiffs and members of the Class have suffered a substantial injury by virtue of buying a product that misrepresented and/or omitted the true contents and benefits of the Magnesium Supplements' magnesium contents. Had Plaintiffs and members of the Class known that Defendant's materials, advertisement and other inducements misrepresented and/or omitted the true contents and benefits of the Magnesium Supplements, they would not have purchased said products.   Likewise, Defendant's misleading and deceptive practices caused Plaintiffs to purchase Defendant's Magnesium Supplements and/or pay more than they would have otherwise had they know the true nature of the contents of the Magnesium Supplements.

139.   As a result of Defendant's above unlawful, unfair and fraudulent acts and practices, Plaintiffs, on behalf of themselves and all others similarly situated, and as appropriate, on behalf of the general public, seeks damages including full restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by law. Misbranded nutritional supplements cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded nutritional supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements are entitled to a restitution refund of the purchase price of the misbranded product.

## TENTH CAUSE OF ACTION
**Breach of Implied Warranty of Merchantability Pursuant to Cal. Com. Code § 2314**
**(Plaintiff Robertson On Behalf of the California Class)**

140.   Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

141.    Defendant is a merchant with respect to the Magnesium Supplements.

142.    The Magnesium Supplements were subject to implied warranties of merchantability running from the Defendant to Plaintiff and Class Members.

143.    An implied warranty that the Magnesium Supplements were merchantable arose by operation of law as part of the sale of the Magnesium Supplements.

144.    Defendant breached the implied warranty of merchantability in that the Magnesium Supplements do not contain the amount of advertised magnesium derived from magnesium glycinate, do not provide the benefits associated with the warranted and advertised 420 mg of magnesium as magnesium glycinate, and thus were not in merchantable condition when Plaintiffs and Class Members purchased them, or at any time thereafter, and they were unfit for the ordinary purposes for which such nutritional supplements are used.

145.    Defendant has breached the implied warranty of merchantability because the Magnesium Supplements when sold would not pass without objection in the trade.

146.    As a result of Defendant's breach of the applicable implied warranties, purchasers of the Magnesium Supplements suffered an ascertainable loss, were harmed, and suffered actual damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, prays for judgment against Defendant as follows:

        a.  An order certifying the proposed Class, designating Plaintiffs as named representative of the Class, and designating the undersigned as Class Counsel;

b.   An order awarding Plaintiffs and class members their actual damages, incidental and consequential damages, punitive damages, statutory damages and/or other form of monetary relief provided by law;

c.   An order awarding Plaintiffs and the class restitution, disgorgement, or other equitable relief as the Court deems proper;

d.   An order enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

e.   Reasonable attorneys' fees and costs;

f.   Pre-judgment and post-judgment interest, as provided by law;

g.   Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: March 29, 2023

PLAINTIFFS, Dalit Cohen and Rosemary Robertson

By:   */s/ Sergei Lemberg*
Sergei Lemberg
LEMBERG LAW, LLC
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile:   (203) 653-3424
slemberg@lemberglaw.com
*Attorneys for Plaintiffs*

34